**NOT FOR PUBLICATION** [6]

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

TIMOTHY J. SHEEHAN and BARBARA
E. SHEEHAN,                                     :

    Appellants,                              :        Civil Action No. 10-5054 (FLW)

    v.                                              :
                                                            **OPINION**

ANDREA DOBIN, TRUSTEE,            :

    Appellee.                                 :
_____

**WOLFSON, United States District Judge:**

    Appellants Timothy J. Sheehan and Barbara E. Sheehan ("Appellants" or "the Sheehans"), proceeding pro se, appeal an Order of the Honorable Raymond T. Lyons, United States Bankruptcy Judge, dated August 25, 2010 ("Order"), granting Andrea Dobin, the Chapter 7 Trustee ("Appellee" or the "Trustee"), the authority to sell real property of the estate – commonly known as Lots 16, 17 and 18 in Block 2102, Princeton Township, Mercer County, New Jersey ("the Lots") – free and clear of certain liens, claims and encumbrances. This Court has appellate jurisdiction to review the decision of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a). For the reasons that follow, the Court affirms the decision of the Bankruptcy Court.

1

I.  BACKGROUND & PROCEDURAL HISTORY

The instant appeal relates to a Chapter 11 Petition for bankruptcy that was filed by Eight Bulls, L.P. ("Eight Bulls" or "Debtor") on July 27, 2009 (the "Petition").  The Petition was signed by Timothy J. Sheehan as the authorized partner of Debtor.  Schedule A to the Bankruptcy Petition reflected that Eight Bulls was the owner of the Lots.  Indeed, as of the Petition date, the last recorded deed for the Lots demonstrated that the Debtor was the record owner.  On January 29, 2010, the Debtor's bankruptcy proceeding was converted to one under Chapter 7 of the Bankruptcy Code.  On that same date, Appellee was appointed to serve as the Chapter 7 Trustee.

Thereafter, in late April 2010, the Trustee began the process of selling the Lots for the benefit of the bankruptcy estate.  The Trustee retained Prudential Fox & Roach Realtors to market the Lots.  Subsequently, on June 23, 2010, the Trustee filed a motion in Bankruptcy Court to sell the Lots via private sale (the "Sale Motion").  The Sheehans objected to the Sale Motion.

The Bankruptcy Court held hearings on July 28, 2010 and August 25, 2010 on the Sale Motion.  The Trustee called three witnesses to testify in support of her Motion and, on the first day of hearings, Mr. Sheehan cross-examined each witness.  However, the Sheehans did not call any witnesses to testify on either of the hearing days.  Following the August 25, 2010 hearing, the Bankruptcy Court granted the Trustee's Sale Motion.  Specifically, the Bankruptcy Court found that the offer made by the Purchaser for $2,120,000 was "the highest and best offer for the real property located at Lots 16, 17 and 18, Block 2102. . . .and the sale price for the Property constitutes full and adequate consideration and reasonably equivalent value for the Property." Bankruptcy Court Order dated August 25, 2010 ("Sale Order").  In addition, the Court found that

the transaction "proposed by the Trustee was negotiated at arm's length and in good faith," and that the Buyer was "a good faith purchaser for value" as defined by the Bankruptcy Code. Id. As a result, Judge Lyons entered an Order, in relevant part, approving the sale of the Lots to the Buyer free and clear of the interests of the Sheehans.

Thereafter, the Sheehans filed a Notice of Appeal from Bankruptcy Court, and, subsequently, a Motion to Stay Pending Appeal. Because the Court affirms the decision of the Bankruptcy Court in its entirety, the request for the stay is denied.

**II. STANDARD OF REVIEW**

When reviewing a bankruptcy court's decision, the standard of review is determined by the nature of the issues presented on appeal. In particular, factual determinations reviewed on appeal should not be set aside unless found to be "clearly erroneous." In re Continental Airlines, 150 B.R. 334, 336 (D.Del.1993) (citing Bankruptcy Rule 8013 and In re Morissey, 717 F.2d 100, 104 (3rd Cir.1983)). A factfinder, rather than a reviewing body, is generally in a better position to make judgments about the reliability of evidence; specifically, the reviewing body only acts pursuant to a written record, while the factfinder is able to evaluate the credibility of a live witness. See Concrete Pipe & Prods. v. Constr. Laborers Pension Trust, 508 U.S. 602, 113 S.Ct. 2264, 2280, 124 L.Ed.2d 539 (U.S.1993). In turn, review of facts under the "clearly erroneous" standard is significantly deferential and requires a "definite and firm conviction that a mistake has been committed." Id. Conversely, legal conclusions from the bankruptcy court "are subject to plenary review by the district court and are considered de novo on appeal." Continental, 150

B.R. 334 at 336.  Mixed findings of fact and conclusions of law must be broken down, and the applicable standards-"clearly erroneous" or de novo-must be appropriately applied to each component. Meridian Bank v. Alten, 958 F.2d 1226, 1229 (3d Cir.1992) (citing In re Sharon Steel Corp., 871 F.2d 1217, 1222 (3d Cir.1989) and Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 102-03 (3d Cir.1981)).

**III. DISCUSSION**

Initially, the Court notes that in their Statement of Issues to be Presented on Appeal, Appellants set forth ten issues for this Court's consideration.  However, the Sheehans' entire Appellate Brief comprises four paragraphs and does not in any conceivable way address the entirety of the issues presented for appeal.[1]   Moreover, the issues that are considered in Appellants' brief are addressed so minimally, that the Court has been left to guess at the basis for this appeal.  However, to the extent that the Court understands the minimal arguments set forth in their Brief, Appellants appear to contest both the manner of the sale as well as the outcome of the sale.

First, Appellants appear to contend that the Trustee's decision to hold a private sale, rather than a public sale, does not meet the Trustee's duty to administer the estate in way to designed to obtain the highest value for the Lots.  Appellants' Brief at 5-6.  In addition, Appellants appear to

---

[1] Indeed, the Court notes that Appellants' brief does not substantially deal with any of the issues, and, in fact, the Brief does not refer at all to the following issues: application of the Rooker-Feldman doctrine; application of res judicata; the Trustee's duty to determine the validity of secured claims; whether the trustee was required to file an adversary complaint prior to the sale.  Thus, the Court considers these issues to be waived.

take issue with the Trustee's decision not to use an appraisal to determine whether the full value was received for the Lots. Id. The Court does not agree.

Section 363 of the Bankruptcy Code allows the Trustee "after notice and a hearing [to] use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In order for the proposed sale to be proper, the Trustee must "satisfy [his] fiduciary duty to the debtor, creditors and equity holders, [by articulating some] business justification for using, selling, or leasing the property outside the ordinary course of business." In re Continental Air Lines, Inc., 780 F.2d 1223, 1226 (5th Cir.1986). Moreover, great judicial deference is given to the Trustee's exercise of business judgment. In re Gulf States Steel, 285 B.R. 497, 516 (Bankr.N.D.Ala.2002) (citing In re Bakalis, 220 B.R. 525, 531–32 (Bankr.E.D.N.Y.1998)).

Initially, the Court notes that in the underlying Bankruptcy proceeding, the Trustee averred that, "[w]ithout the sale of the Lots, this Estate has no assets." Bankruptcy Docket No. 108, Trustee's Motion For Entry of an Order Authorizing Sale ¶ 30. In light of the Trustee's statutory duty to "collect and reduce to money the property of the estate," 11 U.S.C. § 704(a)(1), the Court finds that the Trustee has satisfied the business justification for selling property of the estate. Moreover, the record demonstrates that the Trustee retained a real estate broker to market the Lots and that the broker received seventeen separate offers for the Lots. Further, the record indicates that the Trustee received higher offers for the Lots than their initial listing price. In addition, Appellants have not pointed to anything in the record that would indicate that the Trustee acted in a manner contrary to her duty – or the law – in pursuing the sale of the Lots by private sale. Indeed, Appellants have provided no appraisal whatsoever, let alone an appraisal demonstrating that the value the Trustee received for the Lots was somehow deficient or that the

5

Trustee would have received a higher value had she sold the Lots at a public sale. Thus, based on the record before me, the Court finds that the manner in which the Trustee determined to sell and sold the Lots was entirely proper and in accordance with both the Bankruptcy Code and governing law.

Next, Appellants appear to argue that the sale of the Lots was not made in good faith, and, in particular, that there was an "absence of any credible evidence to sustain 'good faith' on the part of the Purchaser. Appellants' Br. at 5. The Court does not agree.

Section 363 of the Code authorizes a trustee in bankruptcy to sell, other than in the ordinary course of business, property of the estate. 11 U.S.C. § 363(b)(1). The trustee is further authorized under certain conditions to sell the property free and clear of other interests (i.e. liens) in the property. 11 U.S.C. § 363(f). However, such sales are subject to review on appeal as to whether the purchaser acted in "good faith." In relevant part, the Code states that: "[t]he reversal or modification on appeal of an authorization under subsection (b) ... of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such ... sale or lease were stayed pending appeal." 11 U.S.C. § 363(m). When applying this subsection, the court of appeals has held that when a Bankruptcy Court authorizes a sale under section 363(b)(1) of the Code, the Bankruptcy Court must make a finding either implicitly or explicitly with respect to the "good faith" of the purchaser. In re Abbotts Dairies of Penn., Inc., 788 F.2d at 150; In re Stroud Ford, Inc., 163 B.R. 730, 732 (Bankr.M.D.Pa.1993). Specifically, the words "good faith" have been interpreted by courts to encompass a purchaser who purchases in "good faith" and for "value." In re Abbotts Dairies,

788 F.2d at 147; In re Bel Air Assocs., 706 F.2d 301, 305 (10th Cir.1983).  Typically, "good faith" involves the integrity of the purchaser in the course of conduct at the sales proceedings.  In re Abbotts Dairies, 788 F.2d at 147.  Misconduct that would destroy a purchaser's "good faith" status at the sales proceedings includes fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.  Id.

In the instant matter, Appellants appear to argue that because the Trustee provided a proffer to the Court regarding the "good faith" of the Purchaser, the Bankruptcy Court made no determination as to whether or not the Purchaser acted in good faith.  The Court does not agree.  Indeed, not only did the Trustee provide a proffer to the Court regarding the good faith of the Purchaser, but, the Trustee contends – and Appellants do not dispute – that principals of the Buyer were in court and available to testify on August 25, 2010, yet Appellants chose not to cross-examine them.  Thus, the Trustee argues that Appellants "cannot now complain of their failure to cross-examine a witness who was available to them.  In the absence of a challenge to the proffer, it stands as a finding of fact which is uncontested, either on the record or now."  Trustee Br. at 8.

Moreover, the Court notes that contrary to Appellants' argument, the Bankruptcy Court specifically considered the issue of the Purchaser's good faith.  Indeed, based on an independent review of the transcript from the August 25, 2010 hearing, it appears that Judge Lyons expressly considered the requirement that the Purchaser act in good faith in relation to the purchase of the Lots.  First, Judge Lyons considered and rejected Appellants' objection to the good faith of the Purchaser.  Specifically, Judge Lyons explained:

7

> Mr. Sheehan points out that one of the partners of [Purchaser] is an individual who owns property within the Preserve, the adjoining development and whose homeowner's association is in litigation with the debtor.  He suggests that this purchaser may have a motive to resolve the access issue by acquiring the property.  I find that the involvement of a principal of [Purchaser] by being an owner of property within the Preserve is not the type of interest that will disqualify [Purchaser] from being a good faith purchaser.

August 25, 2010 Hearing ("August Tr.")  41:7-16; see also Tr.50:7-12 ("[t]he only suggestion that the sale is not in [good] faith is as I mentioned previously that one of the principals of White Oak Partners owns property in the adjoining development, the Preserve. And the homeowner's association of the Preserve is involved in this quiet title litigation over access. And I find that that is not sufficient to destroy good faith.")

In addition, Judge Lyons made a specific finding that the Purchaser paid value for the Lots. Specifically, Judge Lyons explained that although Mr. Sheehan objected to the approval of the sale "in the absence of an appraisal. . .the Abbotts Dairies case itself has said that where the purchaser has found to have acted in good faith, the auction price itself suffices to demonstrate that the purchaser has paid value for the assets." Tr. 47:1-5.  Further, Judge Lyons explained that because the Trustee had hired an experienced real estate firm to investigate the "proper uses and marketing of this property. . .before the property was listed" and because the listing "generated 17 different offers", the court held that "even in the absence of an appraisal, the marketing process that was utilized by the trustee has been sufficient demonstration that the purchase price offered is fair value for the assets that are being sold. In fact, one could say that the results of the marketing the property are probably better evidence than the opinion of an appraiser, who is speculating as to what a willing buyer would offer to a willing seller for the property. " Tr. Hearing. 47-49.

In the absence of anything to the contrary, Judge Lyons accepted the proffer from the Trustee that,

> there's been no collusion between the purchaser and other bidders or the trustee. That this is an arm's length purchase by White Oak Partners. And there's no attempt to take grossly unfair advantage of other bidders. And that phrase is not self-evident. But generally what that means is by a stalking horse locking up a sale and not permitting sufficient time for other bidders to do due diligence, things like that. Or the debtor coming in, saying that it's an emergency sale. . . That's not the case here. There was no rush to get this sale done. It was done expeditiously, but not overly, on an emergency basis.

August 25, 2010 Hearing ("August Tr.") 49:18- 50: 6.

As a result, Judge Lyons granted the Trustee's motion to sell the Lots and held that "the sale is for value. It's fair value. And that the sale is being made in good faith by the trustee to the purchaser." Tr. 50-51.  The Court agrees.  Based on the record before me, and in the absence of any evidence that the Bankruptcy Court's findings on the element of good faith or fair value were clearly erroneous, the Court finds that the sale of the Lots was made in good faith and for value as required by the Bankruptcy Code.

Finally, to the extent that Appellants contend that their due process rights were somehow violated in the underlying Bankruptcy proceeding, the Court does not agree. The record demonstrates that Judge Lyons held two days of hearings on the Trustee's Sale Motion and that the Sheehans fully participated in those hearings.  Although, as discussed above, the Sheehans elected not to cross-examine the Trustee's witnesses on the second day of the hearings, such a decision does not equate to a violation of due process.

9

**IV. CONCLUSION**

For the foregoing reasons, the Court will affirm the decision of the Bankruptcy Court. Thus, Appellant's appeal is DENIED and this matter is CLOSED.


Dated: April 28, 2011  /s/ Freda L. Wolfson  
　　　　　　　　　　　　　　　　　　　　　　　　　　Freda L. Wolfson, U.S.D.J.